UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

SYMONE NEDD ON BEHALF OF HER INFANT
DAUGHTER THILIA DAVIS,

                                          Plaintiff,

-against-

THE CITY OF NEW YORK; POLICE OFFICER
JONATHAN FOLEY SHIELD #04895; SCHOOL
SAFETY AGENT SHANNON BARNETT; SCHOOL
SAFETY AGENT RUBY HEWETT; SCHOOL SAFETY
AGENT DENISE HIGHTOWER; SCHOOL SAFETY
AGENT MCALPINE; JOHN DOE #1-2

                                          Defendants.

------------------------------------------------------------ X

**COMPLAINT AND JURY DEMAND**

DOCKET #: CV 12-2819

ELECTRONIC FILING CASE

SUMMONS ISSUED
MAUSKOPF, J.
POHORELSKY, M.J.

FILED CLERK
2012 JUN -5 PM 2:25
U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

Plaintiff Symone Nedd on behalf of her infant daughter Thilia Davis, by her attorneys, Stoll, Glickman & Bellina, LLP, for her complaint alleges as follows:

### PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiff seeks relief for the violation of her rights secured by 42 USC §§1983, 1988, the Fourth and Fourteenth Amendments to the United States Constitution, Article 1 sections 6 and 12 of the New York State Constitution, and New York State law.

2. The claim arises from a March 10, 2011 incident in which members of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiff to, inter alia, assault, battery, excessive force, false arrest, false imprisonment, negligence, and violations of New York State Laws.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action is brought pursuant to 28 USC §1331, 42 USC §1983, the Fourth and Fourteenth Amendments to the United States Constitution, and New York State Common Law and Statutes.

5. The amount in controversy exceeds $75,000.00 excluding interest and costs.

## VENUE

6. Venue is laid within the United States District Court for the Eastern District of New York in that Defendant City of New York is located within, and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District of New York.

## PARTIES

7. Plaintiff at all times here relevant resided in Kings County, City and State of New York. Plaintiff was born on May 16, 1997. On March 10, 2011 plaintiff was thirteen years old and a student enrolled in the New York City Public School located at 223 Graham Avenue, Brooklyn NY 11206.

8. The City of New York ("the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant the City, acting through the New York Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, the City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

9. Shannon Barnett was, at all times here relevant, a School Safety Agent ("SSA") of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of

New York. On information and belief, SSA Barnett assaulted plaintiff prior to her arrest and presented false evidence against plaintiff to cover up her illegal conduct. Defendant Barnett is sued in her individual capacity.

10. Ruby Hewett was, at all times here relevant, an SSA of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, SSA Hewett was present when plaintiff was assaulted prior to her arrest, failed to protect plaintiff from defendant Barnett's assault, and presented false evidence against plaintiff in order to cover up defendant Barnett's illegal conduct. Defendant Hewett is sued in her individual capacity.

11. Denise Hightower was, at all times here relevant, an SSA of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, SSA Hightower was present when plaintiff was assaulted prior to her arrest, failed to protect plaintiff from defendant Barnett's assault, and presented false evidence against plaintiff in order to cover up defendant Barnett's illegal conduct. Defendant Hightower is sued in her individual capacity.

12. School Safety Agent McAlpine was, at all times here relevant, an SSA of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, SSA McAlpine was present when plaintiff was assaulted prior to her arrest, failed to protect plaintiff from defendant Barnett's assault, and presented false evidence against plaintiff in order to cover up defendant Barnett's illegal conduct. Defendant McAlpine is sued in her individual capacity.

13. Police Officer Jonathan Foley Shield #04895 was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of

the City of New York. On information and belief, at all times relevant hereto, Officer Foley was plaintiff's "arresting officer" and was under the command of the 90th Precinct of the NYPD. Defendant Foley is sued in his individual capacity.

14. John Doe #1, an individual whose name is currently unknown to plaintiff, is an employee of the NYPD. John Doe #1 was defendant Foley's partner on March 10, 2011 and assisted in the arrest of plaintiff. John Doe #1 is sued in his individual capacity.

15. John Doe #2, an individual whose name is currently unknown to plaintiff, is an employee of the NYPD. John Doe #2 was defendant Foley's supervising officer on March 10, 2011 and approved and/or failed to intervene in the arrest of plaintiff. John Doe #2 is sued in his individual capacity.

16. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

17. Within 90 days of the events giving rise to this claim, plaintiff filed written Notice of Claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of that notice, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

18. On March 10, 2011 plaintiff was attending the New York City Public School located at 223 Graham Avenue, Brooklyn NY 11206.

19. Defendants Barnett, Hewett, Hightower, and McAlpine were working in their capacity as SSA's in plaintiff's school on March 10, 2011.

20. At approximately 12:08 pm, plaintiff was in the cafeteria when she became involved in

a verbal argument with another student. Plaintiff attempted to leave the cafeteria at this time.

21. Defendant Barnett followed plaintiff from the cafeteria, forcefully grabbed her from behind, and restrained her by applying pressure to plaintiff's throat, holding her in a "choke hold." Defendant Barnett dragged plaintiff through the halls continuing to apply the choke hold.

22. While dragging plaintiff, defendant Barnett threw plaintiff forcefully to the ground.

23. Plaintiff was then taken to the school's auditorium where she was handcuffed to a chair. Plaintiff was crying as she sat in the auditorium.

24. Defendant Barnett approached plaintiff and resumed the assault of plaintiff. Defendants Hewett, Hightower, and McAlpine were present as plaintiff was assaulted, however none of the three took steps to protect plaintiff.

25. Police were summoned to the school, and defendant Foley and the John Doe defendant arrived to arrest plaintiff.

26. Plaintiff was arrested by defendant Foley at approximately 12:27 pm. She was transported to the NYPD's 90th precinct, as opposed to being taken directly to Family Court.

27. Plaintiff's mother arrived to the 90th precinct soon after, but was not allowed to see plaintiff.

28. After several hours at the precinct, defendants Foley and John Doe #1 took plaintiff to the Family Court on Jay Street in Brooklyn NY.

29. Plaintiff's mother was told to meet her in the Family Court.

30. Upon information and belief, defendants brought plaintiff to Family Court too late in the day to appear before the Judge. Accordingly plaintiff did not appear before a Judge on March 10, 2011. Instead defendants Foley and John Doe #1 transported plaintiff to Bridges Juvenile Detention Center in Bronx NY where she was held overnight.

31. On March 11, 2011 plaintiff was returned to Family Court. At approximately 5:30 pm plaintiff was released on her own recognizance.

32. Based on false testimony presented by defendants, plaintiff was subjected to a school suspension hearing. After making three appearances the suspension charges brought against plaintiff were dropped.

33. As a result of false statements made by defendants, plaintiff was charged in Family Court with three counts of assault in the second degree, one count of assault in the third degree, and one count of obstructing government administration in the second degree.

34. Plaintiff made numerous appearances in family court defending against the false charges. At the time of the drafting of this complaint, those charges are still pending.

35. Plaintiff suffered pain in her neck, arms, and legs for several days as a result the assault committed against her.

36. At all times during the events described above, the defendant Officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

37. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

38. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

    a. Violation of her rights pursuant to the Fourth and Fourteenth Amendments to

the United States Constitution to be free from an unreasonable search and seizure of her person;

b. Violation of her right to Due Process of Law under the Fourteenth Amendments to the United Stated Constitution;

c. Violation of her New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

d. Violation of her New York State Constitutional rights under Article 1, Section 6 to due process;

e. Physical pain and suffering:

f. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

g. Loss of liberty.

## FIRST CAUSE OF ACTION
(42 USC § 1983)

39. The preceding paragraphs are here incorporated by reference.

40. Defendants have deprived plaintiff of her civil, constitutional and statutory rights under color of law and have conspired to deprive her of such rights and are liable to plaintiff under 42 USC § 1983.

41. Defendants' conduct deprived plaintiff of her right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Defendants' conduct also deprived plaintiff of her right to due process of law, pursuant to the Fourteenth Amendment of the United States Constitution.

42. Defendants falsely arrested plaintiff, used excessive force against plaintiff, and failed to intervene in each other's obviously illegal actions.

43. Plaintiff has been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
(MUNICIPAL AND SUPERVISORY LIABILITY)

44. The above paragraphs are here incorporated by reference.

45. The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that the City has failed to adequately train its employees in the proper handling of minors who are suspected of criminal offenses. Defendants were plainly unaware of the proper management of underage suspects. Upon information and belief, defendant's lack of knowledge or proper techniques for handling of the arrest of underage suspects was due to a lack of proper training. Defendant's insufficient training contributed to the damages caused to plaintiff.

46. Moreover, the City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

47. The City was made aware of the facts underlying this incident. Plaintiff made a written statement which was made part of the Family Court file explaining that defendant Barnett choked her without cause. Moreover plaintiff's mother informed school officials as well as police officers and the Kings County District Attorney's office of defendant Barnett's conduct.

However, upon information and belief, no investigation was done, nor was defendant Barnett disciplined for her conduct.

48. Moreover, the City has long been on notice of the misconduct of the School Safety Agents. The NYPD received 2,670 complaints against school safety agents between 2002 and 2007, according to a 2007 letter Police Commissioner Raymond Kelly sent to the City Council's education committee. In 2008 the NYPD received 1,159 complaints of "misconduct or other type of incidents involving school safety agents" according to Assistant Chief James Secreto, Commanding Officer, School Safety Division, NYPD, in a November 10, 2009 statement before the City Council. These large numbers of complaints are particularly striking given that the public is largely unaware of how to file a complaint against a SSA, and that the NYPD opposes steps taken to educate the public on the right to make a complaint against SSAs. In response to the New York Civil Liberties Union's attempts to educate students and parents on their rights to make complaints against SSAs, Assistant Chief Secreto said, "This type of campaign invites students who may be the subjects of necessary action by student safety agents to make retaliatory complaints, in a manner that could serve to chill the very actions that are necessary to keeping the school safe and orderly."[1] This statement shows that the NYPD has turned a blind eye towards misconduct committed by SSAs in the nominal interest of maintaining order in schools at the expense of the civil rights of students.

49. There have been a number of highly publicized incidents in which SSAs have violated the civil rights of students and teachers in schools. For example, on October 9, 2007, a student at East Side Community High School in Manhattan who was trying to enter school early to catch up on schoolwork became involved in an altercation with a School Safety Officer who refused

---

[1] Sruthi Gottipati, "Council Mulls Report Card For School Safety Agents," Queens Rules (December 20, 2009), available at: http://archives.jrn.columbia.edu/2009/queens-rules.org/2009/12/20/council-mulls-report-card-for-school-safety-agents/index.html, last accessed May 31, 2012.

her entry. The School Safety Officer arrested the student and attempted to take her in handcuffs out of the school's main entrance in front of other students who were gathering to enter the building at the start of the day. The school principal, concerned that such a display would be disruptive to other students and unnecessarily degrading to the arrested student, insisted that the School Safety Officer escort the girl out of the building through a side door rather than the front entrance. In response, the School Safety Officer arrested the principal and charged him with obstruction of governmental administration and resisting arrest. These charges were ultimately dismissed.[2]

50. In February 2010, a 12 year old girl was arrested after writing on her school desk. She was placed in handcuffs and marched in front of her teachers and classmates, while crying, before being taken to the police station and booked for arrest. She would later state: "They put the handcuffs on me, and I couldn't believe it. I didn't want them to see me being handcuffed, thinking I'm a bad person." The charges were eventually dropped. The girl was ultimately not even suspended for her conduct.[3]

51. In January 2008, a five year old boy was arrested after he knocked items off his principal's desk. The boy suffered from speech impediment, asthma and attention deficit disorder. Nevertheless after throwing what was described as a "tantrum," SSAs handcuffed and arrested the five year old. They refused to release him to his babysitter or wait for his mother to arrive at the school. Instead they had him forcibly taken to Elmhurst Hospital Center for a

---

[2] Jennifer Medina, "Police Arrest a Student, Then Her Principal, Too," The New York Times (October 10, 2007), available at: http://www.nytimes.com/2007/10/10/nyregion/10school.html?_r=1, last accessed May 31, 2012.
[3] Stephanie Chen, "Girl's arrest for doodling raises concerns about zero tolerance," CNN.com (February 18, 2012), available at: http://articles.cnn.com/2010-02-18/justice/new.york.doodle.arrest_1_zero-tolerance-schools-police-precinct?_s=PM:CRIME, last accessed May 31, 2012.

mental evaluation. Later when faced with the possibility of returning to the school, the boy broke down in tears. He ultimately had to be sent to a private school due to the ordeal.[4]

52. These incidents are representative of a larger pattern of misconduct by SSAs which has existed and continues to exists, since the NYPD began policing the New York City schools in 1998. A 2007 study completed by the New York Civil Liberty Union states that:

> Because these school-assigned police personnel are not directly subject to the supervisory authority of school administrators, and because they often have not been adequately trained to work in educational settings, SSAs and police officers often arrogate to themselves authority that extends well beyond the narrow mission of securing the safety of the students and teachers. They enforce school rules relating to dress and appearance. They make up their own rules regarding food or other objects that have nothing whatsoever to do with school safety. On occasion they subject educators who question the NYPD's treatment of students to retaliatory arrests. More routinely, according to our interviews and survey, they subject students to inappropriate treatment including:
>
> • derogatory, abusive and discriminatory comments and conduct;
> • intrusive searches;
> • unauthorized confiscation of students' personal items, including food, cameras and essential school supplies;
> • inappropriate sexual attention;
> • physical abuse; and
> • arrest for minor non-criminal violations of school rules.[5]

The results of this study demonstrate the systemic problems which have routinely led to violations of the civil rights of students in New York City public schools similar to those suffered by plaintiff here. The policies and practices of SSAs cause what should be routine school disciplinary matters to unnecessarily escalate to criminal matters and create violent confrontations between students and armed trained adult members of the NYPD.

---

[4] Carrie Melago, "5-year-old boy handcuffed in school, taken to hospital for misbehaving," the New York Daily News, (January 25, 2008), available at: http://www.nydailynews.com/news/5-year-old-boy-handcuffed-school-hospital-misbehaving-article-1.341677#ixzz1wSkxUFIT, last accessed May 31, 2012.

[5] Elora Mukherjee, Marvin M. Karpatkin, "Criminalizing The Classroom: The Over-Policing Of New York City Schools," the New York Civil Liberty Union, March 2007, available at: http://www.nyclu.org/pdfs/criminalizing_the_classroom_report.pdf, last accessed May 31, 2012.

53. These problems are exacerbated by the lack of proper training of SSAs. Unlike other NYPD police officers who ordinarily receive six months of training prior to being deployed to city streets, School Safety Officers receive only fourteen weeks of training prior to being deployed to New York City public schools. Job qualifications for School Safety Officers differ from those for ordinary NYPD police officers as well. Unlike other NYPD police officers, School Safety Officers are not required to have at least 60 hours of college credit or at least two years of military service to qualify. On information and belief, School Safety Officers are also subject to less rigorous medical, psychological, and character screenings.

54. Similarly, the City bears responsibility for the illegal actions of the full members of the NYPD, such as defendant Foley, and the John Does defendants. The aforesaid event was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

55. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have

made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

56. It is important to note that the CCRB has no jurisdiction over SSAs. The Student Safety Act originally contained a provision to extend the jurisdiction of the Civilian Complaint Review Board to give the public the same right to complain against police behavior in the schools as on the streets. However, this was later removed from the bill. The failure of the City to maintain an independent civilian agency to check the misconduct of SSAs has contributed to the prevalence of such misconduct.

57. Even where the CCRB has received a substantiated complaint against an officer within its jurisdiction, the CCRB fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer.

58. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in

their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

59. Moreover, the members of the NYPD are not properly trained in the Family Court Act, which governs the handling of child suspects. Supervisors of the NYPD have failed to ensure that their subordinates are aware of, and/or properly following, the provisions of the Family Court Act. As a results members of the NYPD routinely violate New York State governing the act of bringing juvenile defendants to Family Court.

60. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal. Furthermore, although the City has been on notice, through plaintiff's complaints to the IAB from the first day of the incidents complained of, the City has failed to remedy the wrong.

61. Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

62. The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force and false arrests by its

police officers, but have nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

### THIRD CAUSE OF ACTION
(ASSAULT)

63. The above paragraphs are here incorporated by reference.

64. Defendants made plaintiff fear for her physical well-being and safety and placed her in apprehension of immediate harmful and/or offensive touching.

65. Defendants have deprived plaintiff of her civil, constitutional and statutory rights and have conspired to deprive her of such rights and are liable to plaintiff under common law, and the New York State laws and Constitution.

66. Plaintiff was damaged by Defendants' assault.

### FOURTH CAUSE OF ACTION
(BATTERY)

67. The above paragraphs are here incorporated by reference.

68. Defendants engaged in and subjected plaintiff to immediate harmful and/or offensive touching and battered her.

69. Defendants used excessive and unnecessary force with plaintiff.

70. Defendants have deprived plaintiff of her civil, constitutional and statutory rights and have conspired to deprive her of such rights and are liable to plaintiff under common law, and the New York State Constitution.

71. Plaintiff was damaged by defendants' battery.

### FIFTH CAUSE OF ACTION
(FALSE ARREST AND ILLEGAL IMPRISONMENT)

72. The above paragraphs are here incorporated by reference.

73. Defendants subjected Plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

74. Defendants intended to confine plaintiff.

75. Plaintiff was conscious of the confinement and did not consent to it.

76. The confinement of plaintiff was not privileged.

77. As a result of the false arrest, imprisonment, and deprivation of liberty, plaintiff was damaged.

## SIXTH CAUSE OF ACTION
(CONSTITUTIONAL TORT)

78. The above paragraphs are here incorporated by reference.

79. Defendants, acting under color of law, violated Plaintiff's rights pursuant to §§ 5, 6 and 12 of the New York State Constitution.

80. A damages remedy here is necessary to effectuate the purposes of §§ 5, 6 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiff's rights under those sections.

## SEVENTH CAUSE OF ACTION
(NEGLIGENCE)

81. The above paragraphs are here incorporated by reference.

82. Defendants as officers effecting a seizure of plaintiff had a duty to plaintiff to handle her arrest with reasonable care.

83. Defendants breached that duty by, among other things, restraining plaintiff by use of force applied to plaintiff's throat, by allowing or forcing plaintiff to hit the ground, and by failing to follow police procedures and/or New York State Law for the arrest and processing of juvenile suspects.

84. Defendant's breaches actually and proximately caused claimant's injuries.

85. The injuries claimant suffered were reasonably foreseeable results of defendant's negligence.

## EIGHTH CAUSE OF ACTION
(NEGLIGENT HIRING & RETENTION)

86. The above paragraphs are here incorporated by reference.

87. Upon information and belief, defendant City, through the NYPD, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

88. Upon information and belief, defendant City, through the NYPD, owed a duty of care to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to plaintiff's as a result of this conduct.

89. Upon information and belief, defendants were incompetent and unfit for their positions.

90. Upon information and belief, defendant City knew or should have known through exercise of reasonable diligence that the defendants were incompetent and unfit for their positions, and that this incompetence could lead to harms such as those suffered by plaintiff.

91. Upon information and belief, the City's negligence in hiring and retaining the officer defendants proximately caused plaintiff's injuries.

92. Upon information and belief, because of the defendant City's negligent hiring and retention of defendant officers, plaintiff incurred damages described above.

## NINTH CAUSE OF ACTION
(RESPONDEAT SUPERIOR)

93. The above paragraphs are here incorporated by reference.

94. Defendants' intentional tortious acts were undertaken within the scope of their

employment by defendant City of New York and in furtherance of the defendant City of New York's interest.

95. As a result of defendants' tortious conduct in the course of their employment and in furtherance of the business of defendant City of New York, Plaintiff was damaged.

**WHEREFORE**, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiff punitive damages in an amount to be determined by a jury;

C. Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

DATED:   Brooklyn, New York
         May 31, 2012

TO:  The City Of New York
     New York City Corporation Counsel
     100 Church Street, 4th floor
     New York, NY 10007

     Police Officer Jonathan Foley Shield #04895
     NYPD 90th Precinct
     211 Union Avenue
     Brooklyn, NY, 11211

     School Safety Agent Shannon Barnett
     223 Graham Avenue
     Brooklyn NY 11206

Yours, etc.,

*[signature]*

Stoll Glickman & Bellina LLP
By: Nicholas Mindicino, NM0437
Attorneys for Plaintiff
475 Atlantic Avenue – 3rd Floor
Brooklyn, NY 11217
(718) 852-3710
NMindicino@stollglickman.com

School Safety Agent Ruby Hewett
223 Graham Avenue
Brooklyn NY 11206

School Safety Agent Denise Hightower;
223 Graham Avenue
Brooklyn NY 11206

School Safety Agent Mcalpine
223 Graham Avenue
Brooklyn NY 11206